**James SHEPPERD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 13, 1959.

Daniel W. Davies, Davies & Hirschfeld, Newport, for appellant.

Jo M. Ferguson, Atty. Gen., David B. Sebree, Asst. Atty. Gen., for appellee.

MONTGOMERY, Chief Justice.

James Shepperd was indicted for the murder of C. M. Jacobs. He was found guilty of voluntary manslaughter. His punishment was fixed at twenty years' confinement in the penitentiary. On appeal, he questions the admissibility of testimony concerning difficulties and quarrels with his wife and other misconduct prior to the killing and the sufficiency of the evidence to sustain the verdict. Appellant claimed the killing was done in self-defense.

Appellant and his wife, Mildred, lived in a small settlement near Butler. The house in which they lived belonged to her father, C. M. Jacobs, who lived about two houses away. Appellant and his wife each had children by prior marriages. Mildred obtained a divorce from appellant shortly after the shooting.

A short while before the shooting, appellant came home from work and began to curse his wife's children and to abuse and threaten her. He had been drinking beer. He testified that his wife had been drinking too. The children were not at home. Mildred left and went to her father's, where she reported that appellant was "on another one of his rampages." "Pounding noises from up home" could be heard at her father's. A call for assistance was made to the sheriff's office from her father's home.

Appellant placed some things, including a shotgun, in his car and departed. He testified that it had been his intention to take up living quarters elsewhere but he had returned home upon discovering that he still had on his working clothes. While he was gone, his father-in-law, carrying a .45-caliber pistol in his right hand, went to appellant's home. He walked through it from front to rear, surveying the damage. As the father-in-law was leaving the house by the rear door, appellant drove up in front of the house. Jacobs walked around toward the front of the house. Appellant was seated behind the steering wheel of his car.

Mildred testified that she could see only her father. She stated that her father said, "Don't do it, Jimmy," just as he jumped behind a low cedar tree and raised his arm to shoot. Immediately two shots were fired; one from the shotgun, mortally wounding the father-in-law; and one from

the pistol which struck the left rear door of appellant's car.

Appellant testified that the deceased said nothing to him and without provocation raised his arm to fire. While appellant was obtaining his shotgun from the rear seat of the car, a shot was fired. Appellant then fired the shotgun because, he testified, he was in great fear for his life. No one testified to seeing the actions of appellant when he fired.

■■ There is no merit in the contention that the evidence is insufficient to sustain the verdict. The testimony of the deceased's daughter is sufficient on which to base the verdict. When, as here, the evidence is in direct conflict as to whether the killing was done in self-defense, it is within the province of the jury to determine which of the contradictory witnesses to believe, and this Court will not disturb the verdict. Jones v. Commonweath, Ky., 281 S.W.2d 920; Schull v. Commonwealth, 310 Ky. 319, 220 S.W.2d 842; Shepherd v. Commonwealth, 306 Ky. 121, 206 S.W. 2d 485.

The Commonwealth's attorney, in his opening statement, said that the Commonwealth would prove that appellant "is addicted to and does use intoxicants, and on a great number of occasions he has come into his home while under the influence of liquor and has caused disturbances * * *." In speaking of an occasion prior to the shooting, he said, " * * * there was an altercation and trouble * * *; that he (appellant) threatened and beat his wife; that he tore from the hinges a door in that house * * *." Motions to discharge the jury and to admonish the jury were successively made and overruled. Over appellant's objection, and without any admonition from the trial court, the Commonwealth was permitted to introduce testimony in detail to the effect that appellant had come home drunk on several occasions during the six months preceding the killing, had beaten and treated his wife badly, cursed the children, wrecked fixtures and a

door in the house, and on one occasion had threatened to kill his wife. It was shown that the deceased had known of this conduct.

■ It is urged on behalf of appellant that such testimony was irrelevant and highly prejudicial. The purpose of an opening statement is to outline to the jury the nature of the charge against the accused and the law and the evidence upon which counsel will rely to support it. It is improper to make statements which he cannot prove or will not be permitted to introduce. Criminal Code of Practice, Section 220; Turner v. Commonwealth, Ky., 240 S.W.2d 80. The propriety of the trial court's rulings on the opening statement must then turn on whether the evidence of prior misconduct of appellant was admissible or not. Appellant urges that it described other offenses and was inadmissible.

■ The general rule is that the prosecution cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding proofs that he is guilty of the crime charged. Brashear v. Commonwealth, 178 Ky. 492, 199 S.W. 21. There is another rule, equally applicable, which has been said to form an exception to the general rule, and that is, all evidence which is pertinent to the issue and tends to prove the crime charged against the defendant is admissible, although it may also prove or tend to prove the commission of other crimes by him, or to establish collateral facts. Clary v. Commonwealth, 163 Ky. 48, 173 S.W. 171; Bess v. Commonwealth, 116 Ky. 927, 77 S.W. 349, 25 Ky. Law Rep. 1091. When proof of another crime is admissible under this rule, the fact that it may tend to prejudice the defendant in the minds of the jurors is not grounds for its exclusion. Thus, evidence of other crimes is competent when it tends to establish identity, or guilty knowledge, or the intent or motive for the commission of the crime under trial, or malice, or when

other offenses are so connected or inter-woven with the one being tried that they cannot well be separated from it. Rober-son's Criminal Law and Procedure, Second Edition, Sections 1793-4, pages 1896-1901, and collected cases.

◼ The Commonwealth argues that it was necessary to show the previous con-duct of the appellant in order to explain why the deceased was carrying his pistol and why he was going to the house occu-pied by the appellant as a home. It is urged that this evidence showed that the de-ceased for approximately six months had been increasingly fearful for the physical safety of his daughter and of his property. The action of the deceased cannot be jus-tified as being in defense of his daughter since she was at that time in his home and in no danger, real or apparent.

◼ It is argued that the deceased went to appellant's home to exercise a right to protect his house. An owner in posses-sion of real property has a right to use such means as in the exercise of a reason-able judgment are necessary to protect his premises from forcible invasion, and pre-vent the forcible attempt to divest him of the possession of his property, and in de-fense of his rights an assault and battery upon a trespasser will be justified; but in no case is the taking of life or the infliction of great bodily harm allowable where the invasion is made without actual force, even though forcible in law. Even if a trespass is made with actual force, the right to take life does not arise until the trespasser assaults the owner, and there are reasonable grounds to believe that it is nec-essary to kill, or to wound, to protect life or to prevent great bodily injury. Stacey v. Commonwealth, 189 Ky. 402, 225 S.W. 37, 25 A.L.R. 490; Roberson's Criminal

Law and Procedure, Second Edition, Sec-tion 294, page 392.

Appellant, in returning, was coming back to his own home where he had a right to be even though the deceased owned the prop-erty. He was not a trespasser. The error in the argument of the Commonwealth is that it seeks to justify the conduct of the deceased.

◼ The issue on trial was whether un-der the circumstances the appellant was jus-tified or excused in killing the deceased. Appellant admitted the killing but claimed that it was done in self-defense. His con-duct prior to the day of the shooting was irrelevant and immaterial in the determina-tion of this issue. A showing of the con-duct of appellant and the circumstances of the day of the killing was sufficient. This presented the relations and attitudes of the persons involved. The evidence did not disclose any ill will on the part of appel-lant toward the deceased or any previous discord between them. Any further proof of marital discord between appellant and his wife tended to draw the minds of the jurors from the issue before them, raised a variety of issues, compelled the accused to meet charges of which the indictment gave him no information or notice, and created a prejudice which may have misled or predisposed the jurors to believe the ac-cused guilty of the offense charged.

Accordingly, the evidence of conduct of appellant prior to the day of the killing was inadmissible. The statement of the Com-monwealth's attorney concerning same and the admission of the evidence complained of constitute reversible errors. The cases relied on by the Commonwealth are not considered applicable.

Judgment reversed with direction to grant a new trial.