52 N.J. 377 (1968)
245 A.2d 351
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH ZELICHOWSKI, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued May 21, 1968.
Decided July 15, 1968.
*379 Mr. Paul R. Williams, Jr., argued the cause for appellant.
Mr. Arthur J. Timins, Assistant Prosecutor of Union County, argued the cause for respondent (Mr. Leo Kaplowitz, Prosecutor of Union County, attorney; Mr. Timins, on the brief).
The opinion of the court was delivered by SCHETTINO, J.
This is an appeal from a conviction of atrocious assault and battery.
On June 17, 1966, at approximately 12:30 P.M., an Elizabeth policeman found the deceased, John Schlagenhaft, lying beaten and helpless alongside a brook in a city park. The victim, covered with "crusty blood" and clothed only in a ripped T-shirt and a pair of socks, was removed to a hospital where he died at 8:05 A.M. on June 20.
A Union County Grand Jury subsequently indicted Kenneth Zelichowski and three other men for the murder of John Schlagenhaft.
At the joint trial of Zelichowski and one co-defendant, it developed that the four men, while walking in the park on the evening of June 16, had come across Schlagenhaft sleeping in the grass. Without any apparent reason or provocation, the four had commenced beating and stomping the victim. The attack lasted approximately two minutes and ceased *380 only when the sight of a passing police car frightened the assailants away.
The victim was not found until approximately 15 hours later. In the interim, the victim had somehow moved or been moved approximately 100 feet from the spot of the initial beating. And though the body was found virtually nude, there was no evidence that the four attackers had stripped their victim.
Zelichowski and the co-defendant tried with him were convicted by a jury of atrocious assault and battery.[1] Zelichowski appeals under former R.R. 1:2-1(c) from his conviction and a sentence of 6-7 years and a $1,000 fine.
Defendant's primary contention is that the trial court erred in instructing the jury that it could return a verdict of guilty of atrocious assault and battery. Although the indictment was the customary short-form murder indictment, the trial court listed four possible verdicts: not guilty; first degree murder with a recommendation of life imprisonment; second degree murder; and atrocious assault and battery. The court properly felt that a homicide conviction could not be sustained without proof beyond a reasonable doubt of a proximate relationship between the beating administered by the defendants and the death of the victim.[2] The court decided *381 to charge on atrocious assault and battery because it also felt that, upon the evidence submitted, the jury might entertain a reasonable doubt as to cause of death.

I
Although defendant made no criticism of the court's theory at trial, he now submits that there was no evidentiary basis for a charge on atrocious assault and battery. Defendant asserts that under the evidence submitted the possible verdicts should have been not guilty or guilty of some degree of murder, and that a conviction of atrocious assault and battery must represent a compromise verdict. However, examination of the record discloses several factors which obviously impelled the court's concern on the question of cause of death. The attack took place about 9:30 P.M. on June 16, yet the victim was not found until 12:30 P.M. on June 17, approximately 15 hours after the initial attack. Moreover, the victim's body was found approximately 100 feet away from the spot of the beating, though there was no evidence that the four defendants had moved the victim. And, while no evidence indicated that the four defendants had removed the victim's clothing, the body was found nude except for a ripped T-shirt and a pair of socks.
We cannot say that the trial court's determination that the jury might legitimately entertain a reasonable doubt about cause of death was irrational or unsupportable. The long interval before the body was found, and the circumstantial evidence indicating it had been moved and tampered with, gave the trial court legitimate pause and might have instilled a reasonable doubt in the minds of the jury concerning cause of death. As a legitimate basis for doubt about cause of death did exist, we are satisfied that there is no substance to defendant's claim that a conviction of atrocious assault and battery represented a compromise verdict.

*382 II
Defendant argues that even if the evidence left a legitimate doubt as to cause of death, a conviction for atrocious assault and battery is impermissible under a murder indictment. Specifically, he urges that atrocious assault and battery is not an offense "necessarily included" within murder (see R.R. 3:7-9(c)), and that a conviction of assault on a murder indictment therefore deprives him of his right to be informed of the nature and cause of the accusation against him. N.J. Const., Art. I, § 10.
Although the State objected to the listing of atrocious assault and battery in the charge, neither defense attorney raised any objection to the instruction on possible verdicts. No mention was made of lack of notice or of the issue of lesser included offenses.
Defendant was tried pursuant to a short-form murder indictment which charged that he, along with three others, "did willfully, feloniously and of * * * malice aforethought, kill and murder" the deceased. R.R. 3:4-3(b). This was clearly sufficient to encompass both first and second degree murder, as well as manslaughter. State v. Sullivan, 43 N.J. 209, 241 (1964), certiorari denied 382 U.S. 990, 86 S.Ct. 564, 15 L.Ed.2d 477 (1964).
Felony murder was not involved here. Thus, by charging murder, the State set out to prove that defendant not only took part in the killing of deceased, but that the killing was unlawful and malicious. State v. Gardner, 51 N.J. 444, 457-59 (1968). That is, the State sought to show that the killing was committed without justification or excuse, and that it was committed with an intent to kill or to inflict grave bodily harm. State v. Gardner, supra. This was the minimum necessary to show second degree murder. To prove first degree murder, the State undertook the additional burden of proving a "willful, deliberate and premeditated" homicide. N.J.S. 2A:113-2.
*383 Where, as here, the commission of the homicide is by means of a violent physical attack, it is clear that a murder charge  encompassing as it does the above-mentioned elements  also includes the elements of atrocious assault and battery. Thus, many sources hold the view that a defendant indicted for murder may properly be convicted of some degree of assault on the basis that "assault" constitutes a lesser included offense within the crime of murder. Strader v. State, 210 Tenn. 669, 362 S.W.2d 224, 227 (1962); Sullivan v. State, 236 Ind. 446, 139 N.E.2d 893, 896 (1957); State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42, 55 (1937); Clark v. Commonwealth, 243 S.W.2d 52 (Ky. 1951); State v. Shaver, 197 Iowa 1028, 198 N.W. 329, 335 (1924); People v. Dugas, 310 Ill. 291, 141 N.E. 769, 773 (1923); Mapula v. Territory, 9 Ariz. 199, 80 P. 389 (1905); Kimbro v. State, 113 Ga. App. 314, 147 S.E.2d 876 (1966); Bruster v. State, 50 Tex. Cr. R. 147, Tex. Crim. App. 95 S.W. 1066 (1906); Ex Parte Pettis, 60 Tex. Cr. R. 288, 131 S.W. 1081 (Tex. Crim. App. 1910); Smith v. State, Tex Cr. App., 411 S.W.2d 548, 553 (Tex. Crim. App. 1967); Barnett v. State, 144 Tex. Cr. R. 249, 162 S.W.2d 411, 415 (Tex. Crim. App. 1942); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, 445 (1892); United States v. Hamilton, 182 F. Supp. 548, 551 (D.D.C. 1960); Erisman, "Included Offenses and Murder Prosecutions," 20 Tex. B.J. 686, 703 (1957); 4 Warren on Homicide, § 344, p. 339 (1938); 1 Bishop on Criminal Law, § 780, p. 556 (9th ed. 1923). But see Commonwealth v. Comber, 374 Pa. 570, 97 A.2d 343, 346 (1953); State v. Rorie, 252 N.C. 579, 114 S.E.2d 233, 235 (1960). In 4 Warren on Homicide, § 347, p. 491 (1938), it is stated:
"upon a trial under an indictment for murder or homicide, if the evidence would warrant a verdict of guilty of assault with intent to murder, or of aggravated assault, an instruction as to the lesser offenses should be given."
*384 In State v. Jankowski, 82 N.J.L. 229, 233 (Sup. Ct. 1912), affirmed 83 N.J.L. 796 (E. & A. 1912), the court, in commenting upon the practice of convicting a defendant of an attempt to commit the crime for which he is indicted, observed: "An attempt to commit a crime is embraced within a charge of the crime quite as clearly as an assault is embraced in a * * * charge of manslaughter or murder resulting from direct personal violence."
We agree that where the State's thesis is willful murder, atrocious assault and battery is encompassed, i.e., it is a lesser included offense. Thus, the question of atrocious assault and battery is properly left to the jury where, as here, under the evidence a reasonable doubt might exist as to whether the acts for which the defendant is sought to be held criminally responsible proximately caused the death of the victim.
We are satisfied that defendant was fully informed of the charges against him. To constitute atrocious assault and battery there must be an intentional wounding or maiming through a "savagely brutal" attack. State v. Edwards, 28 N.J. 292, 297 (1958); State v. Chiarello, 69 N.J. Super. 479, 490 (App. Div. 1961); see N.J.S. 2A:90-1. Here, in fact, there was a bill of particulars which notified defendant that he was accused of participating in an intentional physical attack on the deceased, an attack which inflicted serious wounds. Cf. State v. Lehigh Valley R.R. Co., 90 N.J.L. 372, 375 (Sup. Ct. 1917).
Defendant was, then, fully aware that he stood accused of participating in a brutal physical attack. Nor was defendant misled as to the requisite state of mind with respect to atrocious assault and battery. Indeed, defendant's brief concedes that the mental state necessary for a second degree murder conviction  an intent to inflict grievous bodily harm  was clearly encompassed by the indictment; this was more than adequate notice of the criminal intent involved in atrocious assault and battery. In short, defendant was well aware of the elements of atrocious assault and *385 battery against which he would have to defend and was not prejudiced in his defense by failure of the short-form murder indictment to mention atrocious assault and battery by terms. See State v. Rios, 17 N.J. 572, 604 (1955); State v. La Pierre, 39 N.J. 156, 174 (1963), certiorari denied Bisignano v. New Jersey, 374 U.S. 852, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963).
The trial court was obviously acting in the interests of justice when it instructed on atrocious assault and battery  an offense carrying a maximum sentence much lower than the maximum for second degree murder. Defendant, apparently feeling that the instruction was favorable to him, raised no objection. Yet, if defendant had been acquitted of murder and reindicted for atrocious assault and battery, he would have raised the plea of autrefois acquit. See Annotation, "Acquittal on homicide charge as bar to subsequent prosecution for assault and battery," 37 A.L.R.2d 1068, 1070 (1954). The trial court cannot be whipsawed in this manner.
We have carefully examined the other points raised by defendant and find them to be without merit.
The judgment is accordingly affirmed.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  6
For reversal  None.
NOTES
[1] A third defendant pleaded non vult, while the fourth assailant was tried separately and convicted of second degree murder.
[2] There is no doubt that the State had to demonstrate beyond a reasonable doubt a proximate relationship between an assault and death in order to sustain a homicide conviction. State v. Van Duyne, 43 N.J. 369, 380 (1964), certiorari denied 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1964); State v. Sturdivant, 31 N.J. 165, 179 (1959), certiorari denied 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960); 3 Warren on Homicide, § 277, p. 285 (1938). Of course, there was no burden upon the State to prove that the very blows administered by defendant contributed to death. To convict him of homicide it would be sufficient to show that he aided and abetted others in inflicting a beating which proximately caused death. See State v. Riley, 28 N.J. 188, 196-97 (1958), certiorari denied 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832 (1958); Turberville v. United States, 112 U.S. App. D.C. 400, 303 F.2d 411, 413 (D.C. Cir. 1962), certiorari denied 370 U.S. 946, 82 S.Ct. 1607, 8 L.Ed.2d 813 (1962).